**SEMINOLE ELECTRIC COOPERATIVE, INC.,
et al., Plaintiffs,**

v.

**Anthony R. TANNER, et al.,
Defendants.**

**No. 85–1286–Civ–T–13.**

United States District Court,
M.D. Florida,
Tampa Division.

May 7, 1986.

Lynn Hamilton Cole, Tampa, Fla., for plaintiffs.

David R. Best, Orlando, Fla., for defendant/third-party plaintiff.

Ronald M. Hand, Kissimmee, Fla., Douglas A. Walker, Ocala, Fla., for third-party defendants.

## ORDER

GEORGE C. CARR, District Judge.

This cause comes before the Court upon the motions to dismiss the third-party complaint. The third-party complaint seeks contribution and indemnification from third-party defendants John R. Young and Kenneth Murphy for those claims set out in the original complaint. The motions to dismiss assert, inter alia, that indemnification is not available to the defendant/third party plaintiff, Anthony R. Tanner, and that contribution is not allowable in an action brought under the civil remedy provision of the Federal Racketeering Act, 18 U.S.C. § 1964(c) ("Rico"), which is the basis of Count I of the original complaint.

The third-party complaint, although arguably sufficient under the notice requirements of Rule 8, Fed.R.Civ.P., does not necessarily state cognizable claims against the third-party defendants. In particular, this Court questions the validity of Tanner's claim for contribution from the third-party defendants as alleged co-conspirators in the RICO claim. There appear to be no authoritative decisions directly on point and the briefs of the parties offer little assistance to the Court in resolving this matter.

In support of his claim for contribution, Tanner cites decisions that have found an implied right of contribution for implied rights of action under federal securities laws. *See e.g., Sirota v. Solitron Devices, Inc.*, 673 F.2d 566 (2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982); *Heizer Corp. v. Ross*, 601 F.2d 330 (7th Cir.1979). On the other hand, the Supreme Court has held that there is no right of contribution for claims brought under either the Sherman Act or the Clayton Act of the anti-trust laws. *Texas Industries, Inc. v. Radcliff Materials*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981). The Supreme Court distinguished the securities laws from the antitrust laws by observing that portions of both the Securities Act of 1933 and the Securities Exchange Act of 1934 expressly provide for contribution whereas the anti-trust laws have no such express provisions. *Id.* at 640 n. 11, 101 S.Ct. at 2066 n. 11. The Supreme Court took no view as to the correctness of those lower court decisions under the securities laws, but observed that "they do not support implication of a right to contribution when a statute expressly creates a damages action but does not provide for contribution." *Id.*

According to the Supreme Court in *Texas Industries, supra,* a defendant's right to contribution arises in two ways: (1) by affirmative creation of the right by Congress, either expressly or by clear implication; or (2) by the power of the federal courts to fashion a federal common law of contribution. *Id.* at 638, 101 S.Ct. at 2065. Like the anti-trust laws, RICO fails to provide an express provision for contribution among co-conspirators or joint tortfeasors. *Cf. Sedima S.P.R.L. v. Imrex Co., Inc.,* — U.S. ——, 105 S.Ct. 3275, 3280, 87 L.Ed.2d 346 (1985) (legislative history indicates that civil remedies portion of RICO patterned after anti-trust laws). Therefore, as the Supreme Court did in *Texas Industries,* this Court must determine whether Congress created a right of contribution by clear implication by looking to legislative history and other factors such as the class for whose benefit RICO was inacted, the overall legislative scheme, and the tradiational role of the states in providing relief. 451 U.S. at 639, 101 S.Ct. at 2066.

In those cases which review the legislative history of RICO, there is nothing to indicate that Congress intended to give defendants in civil RICO actions the right to

contribution. *See e.g., Sedima S.P.R.L. v. Imrex Co., Inc., supra; Sedima S.P.R.L. v. Imrex Co., Inc.,* 741 F.2d 482 (2d Cir.), *reversed on other gds.,* — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *General Accident Insurance Co. v. Fidelity and Deposit Company,* 598 F.Supp. 1223, 1244 (E.D.Penn.1984) (see authorities cited therein). It is also quite obvious that the civil action provision of RICO was not intended to benefit co-conspirators or joint tortfeasors, but rather was inacted to provide civil redress for the class "wronged by organized crime". *Sedima,* 105 S.Ct. at 3280; *cf. Texas Industries, supra,* 451 U.S. at 639, 101 S.Ct. at 2066 (Clayton Act not adopted for benefit of participants in conspiracy to restrain trade).

The civil remedies provision of RICO provides for treble damages. As explained by the Supreme Court:

> The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers. The absence of any reference to contribution in the legislative history or of any possibility that Congress was concerned with softening the blow on joint wrongdoers in this setting makes examination of other factors unnecessary. 451 U.S. at 639, 101 S.Ct. at 2066.

Therefore, finding neither an express nor an implied right of contribution, this Court must determine whether it has the authority to fashion a federal common law of contribution.

■ In order for this Court to develop federal common law, there must be either a need for a federal rule to protect uniquely federal interests, or a finding that Congress has given courts the power to develop substantive law. *Id.* at 640, 101 S.Ct. at 2067. Those areas of uniquely federal interests are limited to "such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of states and our relations with foreign nations, and admiralty cases." *Id.* at 641, 101 S.Ct. at 2067. Regulation of organized crime does not fall within the above categories and, although RICO is federal legislation, individual states also take active roles in fighting organized crime and providing redress for its injured citizens. *See e.g., Fla.Stat.* § 895.05(6), (7) (1985). In other words, RICO is not concerned with uniquely federal interests. As in the Supreme Court's findings relating to anti-trust laws, this Court finds that there is nothing in RICO "itself, in its legislative history, or in the overall regulatory scheme to suggest that Congress intended courts to have the power to alter or supplant the remedies inacted." 451 U.S. at 645, 101 S.Ct. at 2069. This finding is consistent with the Supreme Court's ruling in *Sedima, supra,* wherein the Court found that RICO was a broad statute enacted to "supplement old remedies and develop new methods for fighting crime" that should not be rewritten by the Court, but rather, any "correction [or addition] must lie with Congress." 105 S.Ct. 3286–87.

■ For the reasons set forth above, this Court finds that there is no right to contribute in a civil RICO action, and that the Court is without the power to create such a right. For the same reasons, this Court finds that there is no right to indemnification for a defendant in a civil RICO action. *See e.g., Brown v. International Union,* 85 F.R.D. 328 (W.D.Mich.1980) (applicable substantive law must provide for indemnification rights). That portion of the third-party complaint which seeks contribution or indemnification for those acts alleged in Count I of the original complaint is therefore DISMISSED.

■ That part of the third-party complaint remaining before this Court relates to the defendant/third-party plaintiff's claims for indemnification and contribution on the state law claims set forth in Count II of the original complaint. Aside from the obvious problem of seeking indemnification when it is undisputed that Tanner has been convicted of criminal RICO acts relating to the civil RICO claims in this action, see *Houdaille Industries, Inc. v.*

*Edwards,* 374 So.2d 490, 492–93 (Fla.1979) (indemnification only available where one against whom it is sought is wholly at fault), this Court's jurisdiction over the third-party defendants is dependent upon pendent state law claims brought in the original complaint. Having dismissed the federal claims against the thirdparty defendants, they remain in this action solely as pendent parties. As observed by the Supreme Court in *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976):

> If the new party sought to be impleaded is not otherwise subject to federal jurisdiction, there is a more serious obstacle to the exercise of pendent jurisdiction than if parties already before the court are required to litigate a state-law claim. Before it can be concluded that such jurisdiction exists, a federal court must satisfy itself not only that Article III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence.

*Id.* at 18, 96 S.Ct. at 2422. Given the above standard, this Court exercises its discretion to decline jurisdiction over the remaining third-party claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966) (pendent jurisdiction is a doctrine of discretion). The third-party complaint for indemnification and contribution for those claims set out in count II of the original complaint is DISMISSED without prejudice to being brought in state court.

In conclusion, the third-party defendants' motions to dismiss the third-party complaint are GRANTED.